UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10082-CIV-MOORE/SIMONTON

**TEXTRON FINANCIAL CORP.,**

    **Plaintiff,**

**v.**

**UNIQUE MARINE, INC., et al.,**

    **Defendants.**

    _____/

**REPORT AND RECOMMENDATIONS REGARDING
PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER,
MOTION FOR PREJUDGMENT WRIT OF REPLEVIN AND MOTION FOR BREAK ORDER**

Presently pending before the Court are Plaintiff's Motions filed on October 20, 2008, seeking a Temporary Restraining Order (DE # 3), Emergency Break Orders (DE # 4) and Emergency Pre-Judgment Writs of Replevin (DE # 5). These motions requested *ex parte* relief and are referred to the undersigned Magistrate Judge (DE # 7). A hearing was held on October 22, 2008, and for the reasons stated herein, it is RECOMMENDED that Plaintiff's Motions be GRANTED, as set forth in the proposed orders attached hereto.

    I.    **BACKGROUND**

According to the Verified Complaint and the exhibits attached thereto, Plaintiff, Textron Financial Corporation, is a company that has a long-standing contractual agreement with Defendant, Unique Marine, Inc., wherein Textron provides financing for boats and boating equipment that are sold by Unique Marine (DE # 1). Todd Ebelin is the President of Unique Marine and signed a personal guaranty for Unique Marine's debts to Textron (DE # 1, Exs. A, B).

Stacey Huerth is the corporate representative for Textron who verified the Complaint and testified at the October 22, 2008 hearing. She explained that Unique Marine orders new inventory by placing an order with a manufacturer. The manufacturer, after receiving financing approval from Textron, delivers the new inventory to Unique Marine and sends the invoice to Textron. As Ms. Huerth testified at the hearing, Unique Marine must pay down the invoice price for items that remain unsold in its dealership by paying Textron a monthly fee that is established in the Statement of Financial Transaction that accompanies each individual item of inventory that Textron finances. These monthly fees vary from item to item and are called "curtailments." Once Unique Marine sells an item of inventory financed by Textron, Unique Marine is obligated, under the terms of the Credit Agreement, to pay the remaining unpaid balance of the invoice price. The Credit Agreement expressly requires Unique Marine to hold the proceeds of the sale in trust for Textron and immediately remit to Textron the amount necessary to cover the invoice price of that item (DE # 1, Ex. A at ¶ 8).

Ms. Huerth testified that a Textron employee inspects Unique Marine's inventory on-site on a monthly basis to ensure that Textron is properly reimbursed. On a recent inspection, Textron discovered that Unique Marine sold six items of inventory financed by Textron, which Unique Marine had neither reported nor paid for as required by the parties' Credit Agreement. Those items are listed in Exhibit D to the Complaint (DE # 1, Ex. D). The total value of these Sold And Unpaid ("SAU") items of inventory is $270,731.50.[1]

---

[1] As Ms. Huerth explained, Exhibit D identifies two twin-engine "boat packages", with the hull and each engine of the boat constituting separate items on the list. Thus, one "boat package" on the list was manufactured by Chaparral Boats, Inc. under Invoice No. 228541, which consists of a hull (Serial No. ROBG0184G708) valued at $50,239.85, as

2

Ms. Huerth also testified regarding her knowledge of two recent discoveries that are not reflected in the pending motions or the attached documents. First, she stated that Textron recently found out that a third twin-engine boat financed by Textron was registered with the State of Florida, meaning that the boat was sold by Unique Marine without notifying Textron or paying for it.[2] In addition, Ms. Huerth stated that Textron received a $40,000 Automated Clearinghouse Payment from Unique Marine (essentially, a wire transfer), but that it was returned due to insufficient funds.

Textron alleges that Unique Marine breached the parties' Credit Agreement by (1) failing to make timely curtailment payments to Textron and (2) failing to make immediate payments to Textron upon the sale of inventory financed by Textron (DE # 1, Ex. A at ¶ 10). According to the Credit Agreement, in the event of Unique Marine's default, Textron is entitled to accelerate the payment of all sums due to it and, therefore, Textron demanded $3,540,163.65, representing the unpaid principal balance due ($3,513,460.42) plus interest and fees as of September 30, 2008 ($26,703.23) (DE # 1 at 3-4). Because Unique Marine has failed to satisfy its debt, Textron asserts that it is entitled to collect the Collateral set forth in the Credit Agreement, which consists of:

> a security interest in all of [Unique Marine's] inventory, equipment, and fixtures; and all discounts, rebates, credits, incentive payments, returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories and accessions thereto, and all accounts, chattel paper,

---

well as two engines (Serial Nos. BAH1500100 and BAGJ1501134), valued at $16,746.61 and $16,746.62. The other "boat package" was manufactured by Pro Sports Boats (Invoice No. 12442), and consists of a hull (Serial No. WJIIA00691708), valued at $145,881.42, as well as two engines (Serial Nos. 1000683 and 1000158), valued at $20,558.50 each.

[2] Textron states that additional items of inventory may have been sold by Textron in violation of the Credit Agreement, but that it is unable to confirm whether this is the case at present (DE # 1 at ¶ 13).

3

> instruments, documents, general intangibles, letter of credit rights and other supporting obligations arising therefrom, and all judgments, claims, insurance policies and payments owed or made to [Unique Marine] thereon, all whether now owned or hereafter acquired, and all proceeds of all the foregoing

(DE # 1, Ex. A at ¶ 1).

Textron avers that it is entitled to a preliminary injunction against Unique Marine to prevent it from selling, transferring, dissipating or commingling the inventory and collateral that Textron claims it owns (DE # 1 at 4-6) (Count I). Textron has also sued Unique Marine for breach of contract (DE # 1 at 7) (Count II), and seeks to enforce the Personal Guaranty executed by Todd Ebelin (DE # 1 at 7-8) (Count III). Finally, Textron requests writs of replevin over Unique Marine's Collateral (DE # 1 at 8-10) (Count IV).

## II.   THE INSTANT MOTIONS

According to Textron, it has an immediate possessory right to the Inventory and Collateral based on Unique Marine's default under the Credit Agreement and it fears that Unique Marine will wrongfully dissipate its assets over the course of these proceedings. Thus, it filed the three presently pending motions on an *ex parte* basis. First, it seeks Emergency Pre-Judgement Writs of Replevin (DE # 5) and the issuance of Emergency Break Orders (DE # 4) pursuant to Florida Law, which will permit it to recover the Inventory and Collateral from Unique Marine, and physically enter Unique Marine's property if it is necessary to do so in order to execute the writs. Textron also seeks an Emergency Temporary Restraining Order (DE # 3) because it claims that there is a risk that Unique Marine will continue to wrongfully sell and transfer the Inventory and Collateral that belongs to Textron during the time that it takes to effectuate the physical seizure of the property.

### III. LEGAL FRAMEWORK FOR ANALYSIS

#### A. Prejudgment Writs of Replevin and Break Orders

Federal Rule of Civil Procedure 64 governs the seizure of property in connection with a civil action. It provides:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction fo the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. P. 64(a). Replevin is a remedy that is expressly available this Rule. Fed. R. Civ. P. 64(b).

Replevin is a statutory remedy under Florida law that permits "[a]ny person whose personal property is wrongfully detained by any other person [to] recover said personal property and any damages sustained by rason of the wrongful taking or detention . . . ." Fla. Stat. § 78.01. In order to obtain the

> issuance of a writ of replevin prior to final judgment, the plaintiff shall first file with the clerk of the court a complaint reciting and showing the following information:
>
> (1) A description of the claimed property that is sufficient to make possible its identification and a statement, to the best knowledge, information, and belief of the plaintiff of the value of such property and its location.
>
> (2) A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right. If the plaintiff's interest in such property is based on a written instrument, a copy of said instrument must be attached to the complaint.
>
> (3) A statement that the property is wrongfully detained by the defendant, the means by which the defendant came into possession thereof, and the cause of such detention according to the best knowledge, information, and belief of the plaintiff.
>
> (4) A statement that the claimed property has not been taken for a tax, assessment, or fine pursuant to the law.

5

> **(5)     A statement that the property has not been taken under an execution or attachment against the property of the plaintiff or, if so taken, that it is by law exempt from such taking, setting forth a reference to the exemption law relied upon.**

Fla. Stat. § 78.055.  Where a party has entered into a contract that gives it the right to take possession of collateral in the event that the other party defaults, "[t]he parties are bound by the contract they freely entered," and Florida "law does not prohibit a secured creditor from taking possession of property he has a contractual right to possess pending the outcome of a suit."  *Lease Fin. Corp. v. Nat'l Commuter Airlines, Inc.*, 462 So. 2d 564, 566 (Fla. 3d DCA 1985).

Although due process requires providing the defendant advance notice and an opportunity to be heard prior to the issuance of an ordinary writ of replevin, Florida law allows a plaintiff to secure an *ex parte* prejudgment writ of replevin if

> (1) . . . the grounds relied upon for the issuance of the writ clearly appear from specific facts show by the verified petition . . . [and]
>
> (2) . . . if the court finds . . . that the defendant is engaging in, or is about to engage in, conduct that may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action or that the defendant has failed to make payment as agreed.

Fla. Stat. § 78.068.  *See also Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am.*, 664 So. 2d 46, 47 (Fla. 3d DCA 1995) (affirming writ of replevin issued pursuant to Fla. Stat. § 78.068 where "the plaintiff established that it had not received payment from the defendant as required by the lease agreement and that the property in question, *due to its movable and transitory nature*, was in danger of removal from the jurisdiction.") (emphasis added).

Moreover, a plaintiff seeking to obtain a prejudgment writ of replevin "must post

bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing, whichever is lesser as determined by the court, as security for the payment of damages the defendant may sustain when the writ is obtained wrongfully." Fla. Stat. § 78.068(3).

Finally, "the plaintiff may petition the court for a 'break order' directing the sheriff to enter physically any dwelling house or other building or enclosure. Upon a showing of probable cause by the plaintiff, the court shall enter such 'break order.'" Fla. Stat. § 78.10.

"The law in Florida is clear that a writ of replevin may only issue against specific property as to which a claimant has a possessory right." *See Future Tech Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1548-49 (S.D. Fla. 1996). It is not designed "for the purpose of recovering the amount which might be found to be due from the defendant to the plaintiff on account, but to recover the property in dispute.'" *Id.* at 1548 (quoting *Johnson v. Clutter Music House*, 46 So. 1, 2 (Fla. 1908)). Nor can a writ of replevin reach intangible property in the form of checking accounts. As this Court has stated in a recent case, "replevin is inappropriate and unavailable when the personalty sought to be recovered is, as a practical matter, incapable of being specifically described . . ., located, identified, and seized . . . ." *Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1353 (S.D. Fla. 2006) (citing *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So. 2d 160, 163-168 (Fla. 5th DCA 1986)). Thus, relying on "well settled" Florida case law, the Court refused to issue a writ of replevin as to "any 'monies' or 'funds' contained in [defendant's] bank accounts [that] could not be brought within the tactile grasp of an officer executing [the] writ." *Id.* (citing *Williams*, 489 So. 2d at 167).

**B.  Temporary Restraining Order**

Pursuant to the Federal Rules,

[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)  the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

As recognized by the Eleventh Circuit Court of Appeals in *Schiavo v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005), the same four factors apply to the determination of whether to grant a temporary restraining order or preliminary injunction: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  The primary difference between the entry of a temporary restraining order and a preliminary injunction is that a temporary restraining order may be entered before the defendant has an adequate opportunity to respond, even if notice has been provided.

A District Court can order an asset freeze as part of preliminary injunctive relief only with respect to assets in which an equitable interest is claimed and established. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 318-33 (1999); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734-36 (11th Cir. 2005); *MediaOne of Delaware, Inc., v. E & A Beepers and Cellulars*, 43 F. Supp. 2d 1348, 1355 (S.D. Fla. 1998).

8

## IV. ANALYSIS

The undersigned notes at the outset that jurisdiction over this matter is established based upon the diverse citizenship of the parties and an amount in controversy in excess of $75,000.  28 U.S.C. § 1332(a).[3]

### A. Prejudgment Writs of Replevin and Break Orders

Textron requests writs of replevin authorizing federal and state agents to enter Unique Marine's business addresses at 93160 Overseas Hwy., Tavernier, Florida 33070 and 1100 Overseas Hwy., Marathon, Florida 33050, for the purpose of securing the Collateral listed in Exhibit C to the Verified Complaint and placing those items within Textron's possession pending the disposition of this case or further Order of this Court. All of the elements necessary in order to issue Prejudgment Writs of Replevin and Break Orders are present in this case.

The undersigned notes that Textron stated that it was unable to identify with specificity items in Unique Marine's possession which it obtained by trading items purchased with proceeds provided by Textron; and, therefore, Textron requested the issuance of a writ that would permit it to replevy such items without the need for a further Order of this Court.  Based on the fact that the a temporary restraining order will prevent the disposition or transfer of any such items, the undersigned recommends that writs of replevin be issued only as to those items of inventory specifically listed in

---

[3]  *See also Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am.*, 664 So. 2d 46, 47 (Fla. 3d DCA 1995) ("[W]e find, as the defendant conceded at oral argument, that the trial court properly exercised its jurisdiction to issue the . . . writs of replevin, regardless of the forum selection clause contained in the lease agreement, because replevin is a possessory action that requires in rem jurisdiction over the subject matter.") (citing *Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc.*, 656 So. 2d 541, 544 (Fla. 5th DCA 1995)).

9

**Exhibit C to Plaintiff's Verified Complaint, and that Plaintiff be permitted file a motion requesting writs of replevin as to any additional items that it identifies during the course of carrying out the seizures of Collateral.  This determination was reinforced at the hearing by the testimony that Unique Marine also receives financing from another source, and therefore it is likely that other vessels will be present which are not collateral subject to replevin and which Plaintiff acknowledged that it does not seek to possess.**

### 1.  Basic Statutory Requirements – Fla. Stat. § 78.055

There is a sufficient description of the Collateral to be replevied set forth in the Monthly Billing Summaries identified as Exhibit C to Textron's Complaint.  Fla. Stat. § 78.055(1).  The Complaint and the attached Credit Agreement demonstrate that Textron is entitled to a security interest in the Collateral upon Unique Marine's default under the terms of the Agreement. Fla. Stat. §§ 78.055(2)-(3).  The Complaint also contains a statement that the property has not been taken for a tax, assessment or fine; or under an execution or attachment (DE # 1 at ¶¶ 50-51); Fla. Stat. §§ 78.055(4)-(5).  Simply stated, upon Unique Marine's breach of the Credit Agreement – by failing to timely make monthly curtailment payments and by selling inventory financed by Textron without holding the proceeds in trust and immediately remitting payments to Textron – allowed Textron to immediately demand accelerated payment of its unpaid debts and established Textron's superior right to possess the Collateral held by Unique Marine (DE # 1, Ex. A at ¶ 11); *see also Lease Fin. Corp. v. Nat'l Commuter Airlines, Inc.*, 462 So. 2d 564, 566 (Fla. 3d DCA 1985) (holding that Florida "law does not prohibit a secured creditor from taking possession of property he has a contractual right to possess pending the outcome of a suit.").

### 2. Requirements for Issuing an *Ex Parte* Writ – Fla. Stat. § 78.068

It is appropriate to issue a prejudgment writ of replevin on a *ex parte* basis, without providing Unique Marine notice or an opportunity to be heard.

First, the facts supporting replevin clearly appear in the record, Fla. Stat. § 78.068(1). The Credit Agreement is clear: Upon Unique Marine's failure to pay its monthly curtailment obligations to Textron or its sale of inventory without holding the proceeds in trust and immediately remitting payment to Textron, all of Unique Marine's outstanding debts to Textron become due and Textron is authorized to immediate possession of the Collateral (DE # 1, Ex. A at ¶¶ 10-11). Textron's Verified Complaint avers that Unique Marine did not make timely curtailment payments and that Unique Marine sold at least two vessels (valued at $270,731.50),[4] without paying Textron as required. Thus, there is at least probable cause to believe, based on the Verified Complaint, that Textron has a possessory right to the Collateral, which is presently held by Unique Marine.

Second, the undersigned finds that there is a well-founded risk that Unique Marine will conceal, remove or transfer the Collateral, Fla. Stat. § 78.068(2); and, that Unique Marine has "failed to make payment as agreed." *Id*.

At the outset, the undersigned finds that the property at issue consists of boating and marine equipment that is transitory by nature, which presents a *prima facie* inference that it is capable of being removed from this jurisdiction. *See Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am.*, 664 So. 2d 46, 47 (Fla. 3d DCA 1995). The undersigned also finds that Unique Marine is a retailer of such items and, in

---

[4] Ms. Huerth also testified at the October 22, 2008 hearing as to Unique Marine's apparent unreported sale of a third vessel.

the course of its business, has already begun the process of transferring the Collateral and selling it to innocent third-party purchasers.

Unique Marine has also promised payments to Textron that it failed to provide. The Verified Complaint alleges that Unique Marine breached the Credit Agreement by selling two boats to innocent purchasers without paying Textron as required; and, Ms. Huerth testified, based on a search of Florida registration records, that a third boat was recently sold by Unique Marine, without paying Textron or otherwise reporting the sale. The basis for this action is that Unique Marine promised to make payments to Textron upon its receipt and its sale of inventory financed by Textron and that it failed to do so. In addition, Textron received a $40,000 Automated Clearinghouse Payment from Unique Marine, which was returned due to insufficient funds.[5]

### 3. Bond – Fla. Stat. § 78.068

In order to obtain a prejudgment writ of replevin, Textron "must post bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing, whichever is lesser as determined by the court". Fla. Stat. § 78.068(3).

The undersigned finds that the value of the goods subject to the writ is $3,134,345.92 (DE # 1 at ¶ 42), and that the balance remaining due and owing is $3,540,163.65 (DE # 4 at ¶ 15). Although the amount of bond based on these findings is $6,268,691.84, Textron has agreed to post a $6,300,000 bond. The undersigned concludes that it is reasonable and appropriate to require Textron to post a $6,300,000

---

[5] The undersigned also notes that, in the Motion for Temporary Restraining Order, Textron's counsel stated that Textron "was told by [Unique Marine] that a payment would be made on October 17, 2008" (DE # 1 at ¶ 8). Although the implication is that no such payment was made, this statement was not entered into the record as a sworn statement and, thus, does not contribute the Court's ultimate determination of this issue.

bond, as agreed.

### 4. Break Orders – Fla. Stat. § 78.10

Florida law expressly requires the Court, upon a showing of probable cause, to enter a break order, "directing the sheriff to enter physically any dwelling house or other building or enclosure" for the purpose of executing a writ of replevin. There is probable cause to believe that, during the time that the writs are executed, Unique Marine's business premises will be inaccessible due to locks or other impediments to entry and that it will be necessary for the United States Marshals Service and/or the Florida Sheriff to hire a locksmith to remove any such impediments. Textron has agreed to bear the costs associated with carrying out any break order; and, Textron has agreed that the property should be re-secured immediately after the writs are executed by replacing any locks or barriers that were removed to gain entry. The facts alleged in the Verified Complaint, combined with the testimony of Ms. Huerth at the hearing, including the testimony regarding Textron's monthly inspections of inventory, establish probable cause to believe that the inventory is located at these premises.

### B. Temporary Restraining Order

Textron seeks a temporary restraining order for the purpose of preventing Unique Marine from continuing to violate the Credit Agreement by selling the inventory financed by Textron to third party purchasers and by dissipating, commingling or concealing the collateral that is owed to Textron; and to protect the collateral during the time that the writs of replevin can be executed. Specifically, Textron seeks a temporary restraining order which, in essence, enjoins Defendant from disposing of any inventory which was financed by Plaintiff ("the collateral"), and, from depositing any proceeds from the sale of the collateral into Defendant's general operating accounts; which requires Defendant

to deposit any such proceeds into a separate trust account; which requires Defendant to provide a daily list of all funds received and identifies the items which generated the funds if such items were financed by Plaintiff; which enjoins Defendant from expending any monies from any accounts into which proceeds were deposited, except under specified circumstances;[6] and which requires Defendant to remit all monies received from the sale of Collateral, as soon as those funds are available.

For the reasons set forth in more detail below, the undersigned finds (1) that Textron has a substantial likelihood of succeeding on the merits of its underlying substantive claims; (2) that, in the absence of a temporary restraining order, Textron's interests will likely be irreparably and immediately harmed; and (3) that the public interest in this matter favors the issuance of a temporary injunction in favor of Textron. Therefore, even though the risk of harm to Unique Marine outweighs the risk of harm to Textron, it is appropriate to issue a temporary restraining order in Textron's favor. Finally, Textron's counsel has certified that there is justification to issue the temporary restraining order without issuing notice to Unique Marine; and, Textron agreed at the hearing that a $100,000 bond as a security is a reasonable condition precedent to issuing a temporary restraining order.

### 1. Likelihood of Success

The undersigned finds that Textron is substantially likely to succeed on the merits of its claims for a preliminary injunction; for breach of contract; to enforce Todd Ebelin's

---

[6] To the extent that the temporary restraining order recommended by the undersigned freezes bank accounts that contain funds from another financing source of Unique Marine, the undersigned notes that those funds can be segregated and, upon motion and a sufficient showing, will be released from the operation of the temporary restraining order. Moreover, the temporary restraining order will expire in ten days.

personal guarantee; and for replevin.

The facts of this case are straightforward: Textron financed inventory for Unique Marine to sell from its dealership; in exchange, Unique Marine was obligated to pay monthly curtailments; and, if any item financed by Textron was sold, Unique Marine was obligated to hold the proceeds in trust and immediately remit a payment to Textron cover the unpaid invoice price of that item. Based on Textron's allegations, Unique Marine failed to do this, which constituted a breach of the Credit Agreement and vested Textron's security interest in the Collateral as defined in the Credit Agreement. Based on the Personal Guaranty attached to the Complaint, Todd Ebelin is jointly and severally liable to Textron for Unique Marine's debts. Though the undersigned recognizes that Unique Marine has not had the opportunity to respond to these allegations, there are no viable defenses available to Unique Marine that are apparent in the record as it currently stands. Therefore, there is a substantial likelihood that Textron will obtain a preliminary injunction; prevail on its breach of contract claim; be capable of enforcing the Personal Guaranty as to Todd Ebelin; and secure writs of replevin over the Collateral.

2. <u>Irreparable and Immediate Injury</u>

In the absence of a temporary restraining order, the undersigned finds that Textron will suffer irreparable and immediate injury.

By virtue of Unique Marine's breach of the terms of the Credit Agreement, Textron is not only entitled to possession of Unique Marine's inventory that was financed by Textron, but also all of Unique Marine's collateral, which, as defined in the Credit Agreement, consists of a wide variety of assets that are not otherwise directly related to Textron, including all of Unique Marine's "inventory, equipment and fixtures," among many other things. In light of the fact that Unique Marine allegedly ignored the terms of

the Credit Agreement by surreptitiously selling items that Textron had financed without reimbursing Textron, it follows that Unique Marine will be inclined to disregard Textron's security interest in other items of collateral and there is no reason to believe that Unique Marine will refrain from transferring, selling or concealing those items if it is not subject to the terms of a temporary restraining order.  The record indicates that Unique Marine sold at least three boats (two of which have a total value $270,731.50), and failed to place Textron's share of the proceeds in trust and deliver it immediately to Textron.  The record further indicates that Unique Marine owes Textron at least $3,540,163.65 in unpaid principal, interest charges and fees.  There is a significant risk that Unique Marine will continue to liquidate the assets that constitute the Collateral owed to Textron and, for all practical purposes, frustrate Textron's rights to collect the Collateral under the terms of the Credit Agreement.  *See Micro Signal Research, Inc. v. Otis*, 417 F.3d 28, 31 (1st Cir. 2005) (finding irreparable injury where "there is a strong indication that the defendant may dissipate or conceal assets.  *See, e.g., Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir.2003); *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir.1996).").

       3.     <u>Balancing the Harm</u>

The undersigned finds that the potential hardship that a temporary restraining order will impose on Unique Marine outweighs the risk that to Textron if a temporary restraining order is not granted.  Although the amount of money that Unique Marine owes to Textron is substantial, Textron acknowledged that its solvency was not dependent on collecting this debt.  Unique Marine appears to be a smaller corporation, and the harm associated with granting the relief sought in the temporary restraining order poses a greater risk of affecting its business.  Nevertheless, the undersigned

concludes that the likelihood that Textron will succeed on the merits of its claims and the likelihood that Unique Marine will frustrate its efforts to enforce the default provisions of the Credit Agreement in the absence of a temporary restraining order are so significant that they overcome the increased risk of potential hardship to Unique Marine if a temporary restraining order is improvidently granted.

### 4. Public Interest

The undersigned finds that the public interest in the outcome of this matter is limited because it involves a private commercial contract. To the extent that the public interest must be weighed at all, this factor tips in Textron's favor because the public is well served when courts enforce the terms of individuals' binding agreements. *See Merle Norman Cosmetics, Inc. v. Labarbera*, No. 07-60811-CV, 2007 WL 3197659, at *2 (S.D. Fla. Oct. 29, 2007). In addition, innocent purchasers will be protected from buying boats which Unique Marine does not have the right to sell.

### 5. Certification of Reasons to Withhold Notice

There is good cause for issuing a temporary restraining order without providing notice to Unique Marine based on Textron's assertions that Unique Marine has already breached the parties' Credit Agreement by selling two boats worth $270,731.50 without notifying or paying Textron as required (DE # 3 at 7). In addition, as stated on the record at the hearing, a search of Florida boat registrations indicates that Unique Marine has recently sold a third vessel without notifying or paying Textron. This conduct suggests that Unique Marine will similarly attempt to prevent Textron from collecting a judgment by secreting away the Collateral if it is provided advanced notice of the temporary restraining order.

6. **Bond**

In light of the fact that Textron is required to post a substantial bond ($6,300,000) in connection with its writs of replevin, the undersigned finds that a nominal bond in the amount of $100,000 constitutes sufficient security for the purposes of entering a temporary restraining order.

V. **Conclusion**

For the reasons stated above, which are based upon a review of the record as a whole, the undersigned

**RECOMMENDS** the immediate entry of the Order to Issue Pre-Judgment Writs of Replevin and well as the Break Orders in the form of the proposed orders attached hereto. The undersigned notes that Textron stated that it was unable to identify with specificity items in Unique Marine's possession which it obtained by trading items purchased with proceeds provided by Textron; and, therefore, requested the issuance of a writ that would permit it to replevy such items without the need for a further Order of this Court. Based on the fact that the a temporary restraining order will prevent the disposition or transfer of any such items, the undersigned recommends that writs of replevin be issued only as to those items of inventory specifically listed in Exhibit C to Plaintiff's Verified Complaint, and that Plaintiff be permitted file a motion requesting writs of replevin as to any additional items that it identifies during the course of carrying out the seizures of Collateral. The undersigned further

**RECOMMENDS** the immediate entry of the Temporary Restraining Order, in the form of the proposed order attached hereto.

Since Plaintiff stated at the hearing that there was no objection to the

modifications made by the undersigned to their proposed Temporary Restraining Order, Break Order and Order to Issue Pre-Judgment Writs of Replevin, and since the Defendant has no right to object to these *ex parte* Orders, it is not necessary to provide ten days for the parties to file objections.

**DONE AND SUBMITTED** in chambers in Miami, Florida on October 22, 2008.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable K. Michael Moore,
　　United States District Judge
All counsel of record